121 So.2d 908

Anne Joe **SCHULER**

v.

**NELSON WEAVER COMPANIES, Inc.**

**Eugene G. SCHULER**

v.

**NELSON WEAVER COMPANIES, Inc.**

6 Div. 492, 493.

Supreme Court of Alabama.

June 30, 1960.

Richard L. Jones and John T. Batten, Birmingham, for appellants.

**728**

Huie, Fernambucq & Stewart, Birmingham, for appellee.

LAWSON, Justice.

Mrs. Anne Joe Schuler brought suit against Nelson Weaver Companies, Inc., to recover damages for personal injuries which she alleged she sustained on or about November 17, 1954, as a result of a fall down some steps which lead to the rear of the building maintained and partially occupied by the defendant at 2201 Highland Avenue in the City of Birmingham. There are two counts in the complaint, one charging negligence, the other wantonness.

Eugene Schuler, the husband of Mrs. Anne Joe Schuler, also brought suit against the same defendant claiming damages for the loss of services and society of his wife and for expenses incurred in the treatment of her injuries. His complaint also included a count charging negligence and one charging wantonness.

Demurrer interposed by the defendant to the amended complaint in each case was overruled and the defendant pleaded in each case the general issue in short by consent in the usual form.

The two cases were consolidated and tried together in the Circuit Court of Jefferson County under the statute authorizing circuit courts in counties of 300,000 or more population to consolidate pending causes of like nature.—§ 221, Title 7, Code 1940. The trial resulted in separate verdicts in favor of the plaintiffs on the wanton counts, the court having given affirmative instructions in favor of the defendant on the negligence count in each case. Judgments were rendered in accordance with the verdicts.

The defendant filed motions for new trials, which were granted. From the judgments granting the new trials the plaintiffs separately appealed to this court. The appeals were consolidated and submitted here on one record.

The new trials were granted on the basis of the trial court's refusal to give in each case an affirmative instruction in favor of the defendant as to the wanton count.

Assignments of error have been made and argued to the effect that the trial court erred in giving affirmative instructions in favor of the defendant in each case on the negligence counts and in giving certain other written instructions in each case at the request of the defendant.

Such actions of the trial court are not before us for review on this appeal from judgments granting the defendant new trials. This appeal brings up for review only the judgments appealed from and the power of this court does not extend to the correction of errors occurring in the main trial, if any. Karter v. Peck & Bro., 121 Ala. 636, 25 So. 1012; Chambers v. Morris, 144 Ala. 626, 39 So. 375; Woodward Iron Co. v. Brown, 167 Ala. 316, 52 So. 829.

The other argued assignments of error are all to the effect that the trial court erred in granting the new trials to the defendant on the ground that the evidence was not sufficient to go to the jury on the wanton counts.

We will refer to some of our decisions wherein wantonness is defined.

In Duke v. Gaines, 224 Ala. 519, 520, 140 So. 600, 601, is this definition:

"* * * 'Wantonness is a conscious doing of some act or omission of some duty under knowledge of existing conditions and conscious that from the doing of such act or omission of such duty injury will likely or probably result. Before a party could be said to be guilty of wanton conduct it must be shown that with reckless indifference to the consequences he consciously and intentionally did some wrongful act or omitted some known duty which produced the injury.' * * *"

In Mobile Electric Co. v. Fritz, 200 Ala. 692, 693, 77 So. 235, 236, is this statement:

"When an act is done or omitted under circumstances and conditions known to the person that his conduct is likely to or probably will result in injury, and through reckless indifference to consequences, or consciously and intentionally one does a wrongful act, or omits an act which he ought to have done, the injury inflicted may be said to be wanton. * * *"

The rule was thus stated in First Nat. Bank of Dothan v. Sanders, 227 Ala. 313, 315, 149 So. 848, and in Griffin Lumber Co. v. Harper, 247 Ala. 616, 25 So.2d 505:

" 'Wantonness is a conscious doing of some act or omission of some duty under knowledge of existing conditions and conscious that from the doing of such act or omission of such duty injury will likely or probably result. * * *' " 227 Ala. 315, 149 So. 849.

In considering the question as to whether the defendant was entitled to affirmative instructions in regard to the wanton counts, we must consider the evidence in its most favorable aspect for the plaintiffs. McNickle v. Stripling, 259 Ala. 576, 67 So.2d 832.

The building where Mrs. Schuler fell was constructed for the defendant company and had been occupied by it for a little more than a year prior to the accident. Before the building was constructed, the architect's plans were submitted to the proper authorities of the City of Birmingham, after which a building permit was issued to the contractor. After the building was completed and ready for use, a certificate of occupancy was issued by the City.

The building was constructed according to the plans and specifications submitted to the City and no mention was made by the City that the steps in question did not meet its requirements. The steps were in the same condition at the time of Mrs. Schuler's fall as at the time the building was first occupied.

The steps which lead from a parking lot at the rear of the building and descend to the first floor of the building are five feet

wide. There are seven treads. The flight of steps is not over four and one-half feet high. There is a brick wall on each side of the steps but no handrail. The steps are made of concrete and have a smooth finish. They are slicker when wet than when dry and there is evidence for the plaintiffs to the effect that they are at all times slicker than some concrete steps.

The plaintiff Eugene Schuler, who was an employee of the defendant and to some degree in charge of maintaining the building, testified that prior to his wife's fall he had told the general manager of defendant that. the steps were slick and that some corrective measure should be taken. He further testified that no correction was made.

Another employee of defendant testified that she had slipped on the steps but had not fallen.

There was no testimony that any person had fallen on the steps before Mrs. Schuler fell.

On the morning of the accident Mrs. Schuler drove her husband to work. They were accompanied by their young daughter. Before entering the parking lot of defendant, the husband unlocked three chains which completely encircled the parking lot at the rear of defendant's building. His automobile was then driven into the parking lot. Rain was falling. Mr. Schuler descended the steps in question and was in the act of opening a door which leads into the building at the foot of the steps when his wife slipped and fell down the steps. Mrs. Schuler was going to enter the building for the purpose of carrying her young daughter to a rest room.

Mrs. Schuler slipped as she was standing on what she described as a "rise." Apparently she was standing on the tread of the first step, which is evidently a little higher than the blacktopped surface of the parking lot area. Her fall occurred before she had taken a downward step.

The evidence shows without dispute that the steps where the fall occurred were designed primarily for the use of employees of the defendant and its tenants and as a service entrance, although there is evidence to the effect that customers of the defendant sometimes used the steps as a means of entering and leaving the defendant's building. This fact was known to the defendant's management.

There is testimony to the effect that the building code of the City of Birmingham "calls for any stairway over 44 inches to have a hand rail on both sides. * * * When it is a required exit or is accessible to the public."

It is the insistence of the appellants that the maintenance of the steps in a slippery or slick condition and the absence of handrails constituted wantonness.

No case has been cited to us and we have found none where any court has held that evidence similar to that presented in this case was sufficient to go to the jury on a charge of wantonness.

No evidence was presented by either side from which it could be reasonably inferred that there was any foreign substance upon the steps. Cf. Louis Pizitz Dry Goods Co. v. Harris, Ala., 118 So.2d 727.[1] The slipperiness of the steps, if they are slippery when not wet, must be inherent in their construction out of material commonly used in public and commercial buildings. As indicated above, the steps were constructed according to an architect's specifications and were of a type considered by him to be safe. No one had ever fallen on the steps before Mrs. Schuler fell in so far as this record discloses.

In our opinion no jury should be permitted to denominate the mere maintenance of smoothly finished concrete steps as an act of wantonness upon which to base a liability for damages to one falling upon them with knowledge of their construction. See Opelika Montgomery Fair Co., Inc., v. Wright,

1. Ante, p. 390.

36 Ala.App. 1, 52 So.2d 404, certiorari denied, 255 Ala. 499, 52 So.2d 412; Stein v. Buckingham Realty Co., Mo.App., 60 S.W. 2d 712, 713.

Nor do we think the absence of handrails on the stairway which was designed primarily for non-public use, for which handrails were not required by the building code of the City of Birmingham, when considered with the slipperiness of the steps, sufficient to show wanton conduct on the part of the defendant in the maintenance of the steps.

We conclude, therefore, that the trial court correctly granted the new trials to the defendant and, consequently, we hold that the judgments appealed from should be affirmed. It is so ordered.

Affirmed.

LIVINGSTON, C. J., and STAKELY and MERRILL, JJ., concur.